IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KAREN BOHIZIC, | ) |
| --- | --- |
| Plaintiff, | ) ) ) ) |
| vs. | ) Civil Action No. 08-19 ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, Karen Bohizic, seeks judicial review of a decision of defendant, Commissioner of Social Security ("the Commissioner"), denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for summary judgment in which she seeks a remand of this case for further consideration will be granted, and the Commissioner's cross-motion for summary judgment will be denied.

---

[1] The Court has jurisdiction of this appeal under 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)), which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the individual resides.

1

## II. Background

Plaintiff filed an application for SSI on December 10, 2004, alleging disability beginning that date due to "2 bad knees" and neck, back, hip and right arm pain.[2] (R. 32-33, 54). Following the denial of Plaintiff's SSI application by the reviewing State agency, she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 23-29). At the hearing, which was held on March 20, 2007, Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. 331-51).

On July 25, 2007, the ALJ issued a decision denying Plaintiff's application for SSI based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[3] (R. 13-20). Plaintiff requested review of the ALJ's decision; however, the Appeals Council denied the request on November 6, 2007. (R. 5-8, 9). This appeal followed.

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial

---

[2] In a Disability Report completed on April 7, 2005, Plaintiff described the manner in which her medical conditions limit her ability to work as follows: "i can't stand on my legs very long, can't sit long, i have pain constantly in my neck, back, both knees. my nerves are bad to where i can't think straight." (R. 55).

[3] RFC is the most a disability claimant can still do despite his or her limitations. Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir.1999)(citing 20 C.F.R. § 404.1545(a)).

2

evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

### III. Facts

Plaintiff's date of birth is May 2, 1959. She was 47 years old at the time of the hearing before the ALJ. Plaintiff's education is limited to the 8th grade, and she had not been employed in the fifteen years preceding the hearing. Plaintiff has a history of nine knee surgeries beginning in the mid 1980's, when she sustained a work-related injury. The last surgery was performed in approximately 2005. Plaintiff alleges that she is disabled due to pain and swelling in her neck, shoulders, back, hands and knees. (R. 335-38).

The medical evidence in Plaintiff's administrative file includes the following: (a) records of Primary Health Network relating to Plaintiff's treatment for various complaints, including pain in her cervical spine, lumbar spine and knees, for

3

the period January 13, 2004 to September 9, 2005 (R. 79-98, 134-40); (b) records of Stuart Anderson, M.D., the orthopedic surgeon who performed surgery on Plaintiff's knees, for the period January 29, 2004 to September 9, 2005 (R. 99-115, 134-40); (c) records of James Dambrogio, D.O., Plaintiff's pain management specialist, for the period December 17, 2004 to January 29, 2007 (R. 116-18, 220-99); (d) reports of MRIs and x-rays taken of Plaintiff's cervical spine, lumbar spine, shoulders and left knee at Edgewood Surgical Hospital between May 26, 2006 and March 15, 2007 (R. 141-46, 300-05); (e) report of an electrodiagnostic study performed on August 7, 2006 in connection with Plaintiff's complaint of neck pain and radiculopathy (R. 147-49); (f) records of UPMC Horizon Hospital (including MRI and x-ray reports and outpatient physical therapy records) for the period January 2, 2004 to August 17, 2006 (R. 150-219); (g) a Medical Questionnaire completed by Dr. Dambrogio on March 6, 2007 concerning the work-related functional limitations resulting from Plaintiff's chronic pain (R. 308-10); and (h) records of Rita Nalubega, M.D., Plaintiff's primary care physician, for the period July 18, 2006 to March 5, 2007 (R. 311-24).

The administrative file also contains the following evidence: (a) lists of Plaintiff's medications (R. 74, 75, 77);[4]

---

[4]The list of Plaintiff's medications prepared the day before the ALJ hearing includes the following: Oxycodone (opiate (narcotic) analgesic used to relieve moderate to severe pain),

4

(b) a Daily Activities Questionnaire completed by Plaintiff on May 2, 2005 (R. 64-73); and (c) a Psychiatric Review Technique form completed by a State agency psychological consultant on May 2, 2005 in connection with Plaintiff's depressive disorder (R. 119-31).

**IV. ALJ's Decision**

When presented with a claim for Social Security disability benefits, an ALJ must follow a sequential evaluation process,[5] which was described by the United States Supreme Court in Sullivan v. Zebley, 493 U.S. 521 (1990), as follows:

\* \* \*

> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether an *adult* claimant is disabled. See Bowen v. Yuckert, 482

---

Percocet (combination of Oxycodone and Acetaminophen used to relieve moderate to severe pain), Zocor (used with lifestyle changes (diet, weight loss, exercise) to reduce the amount of cholesterol and other fatty substances in the blood), Estradial (used to treat hot flashes in women experiencing menopause), Diclofenac (used to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis), Trazadone (used to treat depression), Paxil (used to treat depression, panic disorder and social anxiety disorder), Alprazolam (used to treat anxiety disorders and panic attacks), Soma (used with rest, physical therapy and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains and other muscle injuries) and Lidoderm (a skin patch used to relieve the pain of post-herpetic neuralgia). www.nlm.nih.gov/medlineplus/druginfo (last visited 12/18/2008). On this list, Plaintiff also noted that the combined effects of these medications result in a decreased ability to concentrate, sleepiness, grogginess and nausea. (R. 77).

[5] See 20 C.F.R. § 416.920(a)(4).

5

U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

* * *

493 U.S. at 525-26.

With respect to the ALJ's application of the sequential evaluation process in the present case, steps one and two were resolved in Plaintiff's favor; that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability in December 2004 and the medical evidence established that Plaintiff suffers from the severe impairments of degenerative disc disease, osteoarthritis and obesity.[6] (R. 15). Turning to step three, the ALJ found

---

[6] With regard to the ALJ's finding that Plaintiff suffers from the severe impairment of obesity, in a Disability Report dated April 7, 2005, Plaintiff reported that she was 5'5" tall and weighed 200 pounds. (R. 54). Records of Plaintiff's pain management specialist, Dr. James Dambrogio, indicate that Plaintiff weighed 222 pounds on March 14, 2006 and 227 pounds on January 29, 2007. (R. 220, 260).

6

that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any impairment listed in Part 404, Subpart P, Appendix 1 of the Social Security Regulations, and, in particular, Listing 1.04, relating to disorders of the spine, and Listing 14.09, relating to inflammatory arthritis. (R. 16). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform sedentary work with the following limitations:[7] (a) no repetitive bending or use of foot pedals; (b) the need for a sit/stand option every 15 to 20 minutes; (c) a low stress work environment; (d) only simple, routine, repetitive tasks; (e) minimal public contact; and (f) no repetitive fine manipulation.[8] (R. 16). As to step four, the ALJ noted that Plaintiff has no past relevant work history. (R. 18). Finally, at step five, based on the VE's testimony, the ALJ found that

---

[7] The Social Security Regulations define sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 416.967(a).

[8] Despite his finding that Plaintiff suffers from the severe impairment of obesity, the ALJ failed to discuss the combined effects of Plaintiff's obesity and musculoskeletal impairments in determining her RFC as required by Listings Section 1.00Q. On remand, the ALJ will be directed to reassess Plaintiff's RFC to take her obesity into consideration.

7

considering Plaintiff's age, education, past work experience and RFC, there were a significant number of jobs in the national economy which Plaintiff could perform, including the sedentary jobs of a telephone solicitor, a hand packer and an assembler. (R. 19).

## V. Analysis

Plaintiff asserts that a remand of this case for further consideration is necessary because (a) the ALJ failed to give proper weight to the opinion of Dr. Dambrogio, her treating pain management specialist; (b) the ALJ's credibility determination was flawed; and (c) the ALJ's decision is not supported by substantial evidence since the hypothetical question posed to the VE by the ALJ did not include all of her work-related limitations. These arguments will be addressed individually.

**A**

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis which means "8 hours a day, for 5 days a week, or an equivalent work schedule." See Social Security Ruling 96-8p.[9] With regard to the requirements

---

[9]Social Security Rulings are agency rulings published "under the authority of the Commissioner of Social Security" and "are binding on all components of the Social Security Administration." Sykes v. Apfel, 228 F.3d 259, 271 (3d Cir.2000).

8

of sedentary work, "... [j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday...." *See* Social Security Ruling 96-9p.

In a Medical Questionnaire completed on March 6, 2007, Dr. Dambrogio, Plaintiff's long-time treating pain management specialist, opined, in relevant part, that Plaintiff was (1) limited to lifting 5 pounds occasionally,[10] (2) limited to standing/walking for 20 minutes at a time for a total of 1 hour in an 8-hour workday, (3) limited to sitting for 20 minutes at a time for a total of 1 hour in an 8-hour workday, and (4) incapable of "working *any job* on a 'regular and continuing basis', meaning 8 hr/day, 5 days/week or an equivalent schedule." (R. 309).

If accepted, the opinion rendered by Dr. Dambrogio in the Medical Questionnaire completed on March 6, 2007 would dictate a finding that Plaintiff is disabled due to an inability to perform the minimal requirements of sedentary work on a regular and continuing basis as described in the above-cited Social Security

---

[10]As noted in footnote 7, sedentary work under the Social Security Regulations requires the ability to lift up to 10 pounds at a time.

9

Rulings. The ALJ, however, rejected Dr. Dambrogio's opinion on the ground that it was inconsistent with the doctor's treatment notes for Plaintiff's office visits on December 19, 2006 and January 29, 2007. (R. 18). Plaintiff asserts the ALJ erred in rejecting Dr. Dambrogio's opinion on this ground. After consideration, the Court agrees.

With respect to Dr. Dambrogio's treatment notes relating to Plaintiff's office visit on December 19, 2006, the ALJ stated in his decision:

> "On December 19, 2006, Dr. Dambrogio opined that the claimant was restricted from any heavy physical activity, any lifting over 10 pounds repeatedly or over 20 pounds occasionally aggravated the pain." (R. 18).

The Court agrees that this statement in Dr. Dambrogio's December 19, 2006 treatment notes appears to be inconsistent with his opinion on March 6, 2007 regarding Plaintiff's lifting ability. However, there are no statements in the December 19, 2006 treatment notes that are inconsistent with Dr. Dambrogio's opinion on March 6, 2007 concerning the limitations on Plaintiff's ability to stand/walk and sit in an 8-hour workday *or* her inability to work on a regular and continuing basis, which also preclude the performance of sedentary work. Moreover, the ALJ impermissibly relied on this one statement in the December 19, 2006 treatment notes to reject the opinion rendered by Dr. Dambrogio on March 6, 2007 regarding Plaintiff's work-related limitations without acknowledging other statements in the same

10

notes which do support the opinion. For example, Dr. Dambrogio also stated in the December 19, 2006 treatment notes that Plaintiff "is able to function on a daily basis with her analgesic medication," *i.e.*, Percocet and Roxicodone, and that Plaintiff "is functionally mobile with her medication." (R. 224). As noted by Plaintiff, no reasonable person would assume that "functionally mobile" equates with the ability to work on a regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week.

As to Dr. Dambrogio's treatment notes relating to Plaintiff's office visit on January 29, 2007, the ALJ stated in his decision:

> "On January 29, 2007, Dr. Dambrogio reported that the claimant was functionally mobile and able to operate a motor vehicle without any adverse effects either from her medication or from her injuries. She had no chest pains, shortness of breath, night sweats, chills or fever. Her mood was good, decent and stable, and all other review of her systems were essentially negative." (R. 18).

The Court agrees with Plaintiff that the ALJ's reliance on her clearance to operate a motor vehicle and her lack of complaints of chest pains, shortness of breath, night sweats, chills or fever to support his finding that Plaintiff is not disabled is misplaced.

Regarding Dr. Dambrogio's clearance of Plaintiff to operate a motor vehicle on January 29, 2007, the Court is not aware of any case law limiting a finding of disability to Social Security claimants who cannot operate a motor vehicle because of their

impairments. Thus, this notation provides little, if any, support for the ALJ's adverse decision. Turning to Dr. Dambrogio's statement in the January 29, 2007 treatment notes concerning Plaintiff's lack of complaints of chest pains, shortness of breath, night sweats, chills or fever, these conditions are totally unrelated to Plaintiff's impairment which is alleged to be disabling, *i.e.*, chronic pain from degenerative disc disease and osteoarthritis. Thus, the failure of Plaintiff to complain of any of these conditions does not provide support for the ALJ's adverse decision.

In addition, the Court notes that an ALJ may not pick and choose only evidence that favors his or her adverse decision. *See, e.g.*, Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir.2000)(ALJ had not met his responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination."); Wier v. Heckler, 734 F.2d 955 (3d Cir.1984)(ALJ failed to mention and explain medical evidence adverse to his determination to deny benefits necessitating remand); Garfield v. Schweiker, 732 F.2d 605 (7th Cir.1984)(While it is often impracticable and fruitless for every document in claim for Social Security benefits to be discussed separately, the ALJ may not select only evidence that favors his ultimate conclusion; his written decision should contain, and his

12

ultimate determination should be based upon, all of the relevant evidence in the record). Despite this well-established principle, the ALJ in the present case failed to acknowledge the portion of Dr. Dambrogio's treatment notes for January 29, 2007, which do support Plaintiff's claim of disability due to chronic pain from degenerative disc disease and osteoarthritis. Specifically, the ALJ failed to mention that Plaintiff's physical examination during this office visit revealed multiple areas of rigidity, spasm or tenderness in Plaintiff's cervical spine, lumbar spine and left wrist, as well as painful and limited ranges of motion in those areas.

Finally, under the Social Security Regulations, opinions of a claimant's treating physician are entitled to substantial and, at times, even controlling weight.[11] *See* <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir.2000)("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").

---

[11] Where a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record," it will be given "controlling weight." 20 C.F.R. 416.927(d)(2).

In the present case, Dr. Dambrogio's opinion concerning the work-related functional limitations resulting from Plaintiff's chronic pain was well-supported by the record, including (a) evidence of Plaintiff's history of nine knee surgeries, (b) the findings on objective diagnostic testing of Plaintiff's cervical spine, lumbar spine, shoulders, knees and wrists, (c) the frequency with which Plaintiff is seen by Dr. Dambrogio to manage her pain,[12] (d) Plaintiff's need for narcotic pain medication to be "functionally mobile," and (e) the number of different treatment modalities that Plaintiff has tried in an attempt to alleviate her pain.[13] Moreover, Dr. Dambrogio's opinion was the *only* medical opinion in the record regarding Plaintiff's work-related limitations because a Physical RFC Assessment by a State agency medical consultant is not in the record and for reasons that are not apparent the ALJ did not schedule a consultative examination of Plaintiff. In sum, the ALJ impermissibly substituted his own judgment for that of a treating physician. Ferguson v. Schweiker, 765 F.2d 31 (3d Cir.1985).

---

[12] In 2005, Plaintiff was treated by Dr. Dambrogio on 25 occasions, and, in 2006, Plaintiff was treated by Dr. Dambrogio on 38 occasions.

[13] The treatment options that Plaintiff has pursued in her attempt to obtain pain relief include physical therapy, aqua therapy, therapeutic massage, electrical stimulation, analgesics and muscle relaxers, trigger point injections and surgery.

Based on the foregoing, on remand, the ALJ will be directed to obtain further evidence concerning the work-related functional limitations resulting from Plaintiff's chronic pain and to consider further the weight to which Dr. Dambrogio's opinion regarding such limitations is entitled.

**B**

Turning to the ALJ's finding that Plaintiff's allegations of disabling pain were not entirely credible, the ALJ concluded that although objective medical evidence established abnormalities which could reasonably be expected to produce Plaintiff's symptoms, the evidence did not support her statements concerning the intensity, persistence and limiting effects of those symptoms. (R. 17).

With respect to the evidence that allegedly supports his credibility determination, the ALJ stated:

> "The claimant testified that she lives alone and has help from her daughter and sister. She also testified that she lies down or sits in a recliner during the day. She did not, however, indicate a need to do anything specific to relieve pain. The claimant had earlier reported that her medication relieved her pain and that she took hot showers and used ice packs and biofeedback. (Exhibit 5E). It is inconsistent for the claimant to report that medication relieved her pain and allege severe and constant pain. It is also inconsistent to allege severe pain without testifying about actions taken to relieve the pain. While the claimant testified she has help from her daughter and sister, she is still able to live alone; therefore, she is able to perform many activities independently. Accordingly, the undersigned finds that the claimant's allegations of total disability are not entirely credible." (R. 17-18).

15

After consideration, the Court agrees with Plaintiff that the ALJ's credibility determination is flawed.

First, the Court notes that the ALJ's statements that Plaintiff did not testify to "a need to do anything specific to relieve pain" or "about actions taken to relieve the pain" are inconsistent with his other statements in the very same paragraph. Specifically, the ALJ acknowledged Plaintiff's testimony regarding her need to lie down or sit in a recliner during the day to relieve pain, as well as her need for pain medication, hot showers, ice packs and biofeedback to control the pain. Moreover, the ALJ failed to mention other testimony by Plaintiff concerning actions taken to relieve her pain, including her need to sleep on the first floor of her house and use a porta potty to avoid climbing the stairs to the second floor where her bedroom is located and the need to limit the amount of time she drives a car because her neck pain is aggravated when she turns her head. (R. 337, 344).

Second, with regard to the ALJ's conclusion that Plaintiff "is able to perform many activities independently" because she "is still able to live alone'" the Court agrees with Plaintiff that this conclusion "flies in the face of the uncontroverted evidence." Plaintiff testified that she requires the assistance of her sister and daughter with all household chores, and the

information provided by Plaintiff in the Daily Activities
Questionnaire completed on May 2, 2005 is consistent with this
testimony.[14] Moreover, as noted by Plaintiff, this conclusion is
contrary to the law of the Third Circuit. For example, in Smith
v. Califano, 637 F.2d 968 (3d Cir.1981), the Third Circuit
stated:

\* \* \*

> The ALJ's conclusion that claimant did not have a
> statutory disability is, as a matter of law, just too
> speculative to be sustainable. The ALJ seems to have relied
> heavily on the fact that claimant had testified that "he had
> full use of his hands, arms and legs, does shopping and last
> fall went hunting twice." App. at 124. Yet, statutory
> disability does not mean that a claimant must be a
> quadriplegic or an amputee. Similarly, shopping for the
> necessities of life is not a negation of disability and even
> two sporadic occurrences such as hunting might indicate
> merely that the claimant was partially functional on two
> days. Disability does not mean that a claimant must
> vegetate in a dark room excluded from all forms of human and
> social activity. Smith's activities are minuscule when
> compared to a plethora of cases which have held that there
> was total disability even when the claimant was far more
> active than Smith. It is well established that sporadic or
> transitory activity does not disprove disability. The
> decision of the Eighth Circuit in Yawitz v. Weinberger, 498
> F.2d 956 (8th Cir.1974) is instructive. Claimant there
> averred to disabling headaches, although he drove a car,
> took cross country camping trips and did considerable
> handiwork around the house. Medical evidence showed that
> claimant suffered severe headaches but that he was otherwise
> healthy. A vocational expert testified that claimant could
> perform certain jobs, although his headaches would interfere

---

[14] In the Daily Activities Questionnaire, Plaintiff reported
that either her sister or her daughter help her with the
following activities: laundry, cleaning the house, bathing,
shaving her legs, fixing her hair, dressing, transportation by
car, paying bills, mowing the lawn, yard work, taking out the
trash and cooking a meal. (R. 64-73).

17

with his performance. Nevertheless, the court overturned
the ALJ and ruled claimant disabled. As the Court noted in
Willem v. Richardson, 490 F.2d 1247 (8th Cir.1974), "[the
claimant's] sporadic and transitory activities may
demonstrate not his ability but his inability to engage in
substantial gainful activity. 490 F.2d 1247, 1249 n.4
quoting, Wilson v. Richardson, 455 F.2d 304, 307 (4th Cir.
1972). Similarly, the sporadic and transitory nature of
Smith's activities demonstrate not his ability but his
inability to engage in substantial gainful activity.

  The ALJ's error in drawing an inference from sporadic
activities to a lack of disabling pain is compounded by the
absence of corroborating medical testimony. Such evidence
is essential to a finding of non-disability. Williams v.
Richardson, supra; Garrett v. Richardson, 471 F.2d 598 (5th
Cir.1972).

* * *

637 F.2d at 971-72.

Similarly, the evidence that was before the ALJ does not support

a finding that Plaintiff engages, or is able to engage, in a

wide-range of independent activities. Further, as in Smith, the

ALJ's error in this regard is compounded by the lack of

corroborating medical evidence. Accordingly, the issue of

Plaintiff's credibility should be re-visited on remand.

C

If an ALJ poses a hypothetical question to a vocational

expert that fails to include all of a Social Security disability

claimant's impairments that are supported by the record, the

vocational expert's opinion concerning the ability of the

claimant to engage in substantial gainful activity cannot be

considered substantial evidence supporting the denial of

18

disability benefits. *See, e.g.*, Ramirez v. Barnhart, 372 F.3d 546 (3d Cir.2004).

As noted previously, the only medical opinion in the record that addresses Plaintiff's work-related functional limitations is the Medical Questionnaire completed by Dr. Dambrogio on March 6, 2007. Despite Dr. Dambrogio's opinion that Plaintiff was limited to standing/walking no more than 1 hour in an 8-hour workday, limited to sitting no more than 1 hour in an 8-hour workday and would miss more than 5 days a month due to her chronic pain, the ALJ failed to include any of these limitations in his hypothetical question to the ALJ. Significantly, when asked by Plaintiff's counsel whether an employee who is absent more than 5 days a month due to medical conditions could maintain substantial gainful activity, the VE testified that he or she could not. (R. 350). Under the circumstances, the Court concludes that the VE's testimony in this case does not constitute substantial evidence supporting the ALJ's adverse decision, and the ALJ will be directed to obtain further vocational expert testimony, if necessary, on remand.

**VI. Conclusion**

For the foregoing reasons, the decision of the ALJ denying Plaintiff's application for SSI will be vacated and the case remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion, including (1) a reassessment of

Plaintiff's RFC to consider Plaintiff's obesity in combination with her other severe impairments in accordance with Listings Section 1.00Q; (2) the referral of Plaintiff for a consultative physical examination and completion of a Physical RFC Assessment; (3) reconsideration of the weight to which Dr. Dambrogio's opinion concerning Plaintiff's work-related functional limitations due to chronic pain is entitled; and (4) further vocational expert testimony, if necessary.

*William L. Standish*
William L. Standish
United States District Judge

Date: December 23, 2008